JUDGE TORRES                     15    CV    03308

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

ROLANDO RODRIGUEZ JR.,

                        Plaintiff,

v.                                                    **COMPLAINT AND DEMAND**
                                                      **FOR JURY TRIAL**

CULINARY ACADEMY OF NEW YORK, INC.,
Individually and d/b/a STAR CAREER ACADEMY,
ADRIANNA TORTORELLO, MICHELE MUMMA,
DERRICK RUFFIN, STEEVE DUMERVE,

                        Defendants.



Plaintiff, Rolando Rodriguez, through his counsel, LAW OFFICE OF JOHN C. LUKE

JR. ESQ., hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

   U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991,

   Pub. L. No. 102-166 ("Title VII"), The New York State Executive Law, and the New York

   City Human Rights Law, New York City Administrative Code § 8-502(a), et. seq.

   ("NYCHRL"), 42 U.S.C. § 1981, and seeks damages to redress the injuries Plaintiff

   suffered as a result of being exposed to a hostile work environment, discrimination based on

   race, retaliation, and wrongful discharge.

2. Jurisdiction of this action is conferred upon this Court as this action involves a federal

   question under Title VII of the Civil Rights Act. This Court also has supplemental

   jurisdiction over the State and City Causes of Action.

3. As the unlawful practices complained of herein occurred within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391.

4. On or about July 2, 2014, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

5. On or about February 12, 2015, the EEOC issued a Right to Sue Letter to Plaintiff.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

7. Plaintiff, is a resident of the County of Suffolk, State of New York.

8. Plaintiff is a male of Cuban national origin and race and Hispanic Race.

9. At all times material, Defendant, CULINARY ACADEMY OF NEW YORK, INC. is a DELAWARE corporation that does business in the State of New York.

10. At all times material, Defendant, CULINARY ACADEMY OF NEW YORK, INC. does business as Star Career Academy.

11. At all times material, Defendant Culinary Academy of New York, Inc. individually and d/b/a Star Career Academy (herein also referred to as "STAR" or "Defendant") is a foreign business corporation doing business in New York State.

12. STAR is a for profit network of private, secondary schools located in New York, New Jersey, and Pennsylvania.

13. At all times material, Defendant ADRIANNA TORTORELLO (herein after also referred to as "TORTORELLO" was an employee at STAR.

14. At all times material, Defendant TORTORELLO held supervisory authority over Plaintiff.

15. At all times material, Defendant MICHELE MUMMA (herein after also referred to as "MUMMA" was and is an employee at STAR.

16. At all times material, Defendant MUMMA held supervisory authority over Plaintiff.

17. At all times material, Defendant DERRICK RUFFIN (herein after also referred to as "Ruffin" as and is an employee at STAR.

18. At all times material, Defendant RUFFIN held supervisory authority over Plaintiff.

19. At all times material, Defendant STEEVE DUMERVE (herein after also referred to as "Dumerve" was and is an employee at STAR.

20. At all times material, Defendant DUMERVE held supervisory authority over Plaintiff.

21. At all times material, Plaintiff was an employee for Defendants at their New York City and Syosset, New York campuses.

**FACTS**

22. Plaintiff commenced employment with Defendant STAR on March 24, 2008 as an Admissions Representative.

23. At the time of his hire STAR was known as the Culinary Academy of New York, then Career Academy of New York.

24. On or around May 2011, the Culinary Academy of New York changed its name to Star Career Academy.

25. Plaintiff's place of employment for defendants was located at 154 West 14th Street, New York, New York.

26. At all times material, Defendants did not have human resources department in which to take complaints of discrimination or harassment.

3

27. Plaintiff started his employment with Defendants with over twenty-five (25) years of experience in various capacities.

28. Within four years of his five and a half (5.5) years at STAR, Plaintiff recruited over 468 students.

29. Each student enrolled at a cost of fourteen thousand ($14,000.00) dollars per student.

30. Plaintiff brought STAR approximately six million five hundred thousand dollars ($6,500.000.00) in revenue.

31. Of the approximately 500 personally developed leads/referrals Plaintiff brought to STAR, 122 students enrolled.

32. Those 122 students made up approximately one million, seven hundred thousand dollars ($1,700,000.00) in revenue for STAR.

33. Plaintiff recruited the above 122 students without the assistance of STAR or marketing tools.

34. In educational sales the above number of enrolled students is outstanding.

35. Plaintiff kept an above average close rate of approximately 77.5%.

36. The average admissions representative averages around 50%.

37. Defendant STAR required Plaintiff to work from the hours of 7:30 a.m. to 8:00 p.m. Monday through Thursday without additional compensation on orientation days and on the first seven (7) days of the class start which takes place every month. His work status during this time was non-exempt.

38. Four (4) months into his career with STAR Plaintiff experienced his first direct racial encounter.

39. Defendant STAR's employee Shari Cohen referred to Plaintiff's race as "**DIRTY**."

40. Ms. Cohen stated, "**WHITE AMERICAN CONSENSUS IS THAT SPANISH PEOPLE ARE DIRTY.**"

41. Ms. Cohen repeated the racial comments.

42. Ms. Cohen further stated, "**THEY ARE NOT LIKE ITALIAN OR FRENCH CULTURES THAT HAVE CULTURE AND ARE EUROPEAN.**"

43. Plaintiff filed a grievance regarding the racial encounter with Ms. Cohen.

44. Six (6) months later, Defendant STAR's white employee, John Sagona, referred to Plaintiff as a "**BEIGE SPIC.**"

45. Plaintiff immediately filed a grievance regarding this direct racial slur.

46. The result of this filing by Plaintiff led to a further escalation of the hostile work environment.

47. Defendant created an atmosphere that made Plaintiff feel uncomfortable and humiliated on a regular basis.

48. The environment hindered Plaintiff's job performance due to the stress created by Defendants.

49. Following Plaintiff's second grievance, Defendants labeled him a "troublemaker."

50. Defendants required Plaintiff to check in with the receptionist every time he stepped away from his desk.

51. Defendants did not require other employees to check in whenever they walked away from their workspace.

52. Defendants continued to allow staff to direct racial comments and slurs towards Plaintiff.

53. Plaintiff's complained to his managers regarding the comments but Defendants did nothing to stop the racial harassment.

54. As a result of Plaintiff's complaints, Defendants customarily left Plaintiff out of training sessions that were integral to his employment duties.

55. Some of the routine harassment and retaliation purposely directed at Plaintiff by Defendants included:

    a. **Stolen cellular phones**

    b. **Missing office chair**

    c. **Inoperable phone system**

    d. **Missing files**

    e. **Sabotaged computer**

    f. **Unplugged office electronics**

56. Admissions Coordinator/Front Desk Receptionist Fatima Ahmed informed Plaintiff that STAR management instructed her to unplug Plaintiff's computer and hide his phone.

57. After making his complaints, Plaintiff applied for four (4) different positions within the company.

58. The job titles were:  Director of Admissions, Director of Student Services, Coordinator of International Students, and Externship Coordinator of Hotel Restaurant Management.

59. Although highly qualified, Defendants denied Plaintiff an opportunity to interview for the positions.

60. Defendant hired one White female and three White males to fill those positions.

61. In 2011, Plaintiff applied for the Coordinator of Business and Government Training in Syosset, New York.

62. This position was a corporate position within STAR and therefore a promotion.

63. Plaintiff on numerous occasions requested a job description, offer letter, benefits, and pay but Defendants never offered the information to him.

64. Defendants told Plaintiff "They would figure it out as they go."

65. Nine months after Plaintiff expressed his desire to take the corporate position, Defendants offered the position to Plaintiff.

66. Plaintiff, however, declined due to the vagueness of the position.

67. Defendants MUMMA and TORTORELLO consistently attempted to convince Plaintiff to take the offered position.

68. Before Plaintiff accepted the job, Defendants hired his replacement, Lisa Marriot an African American.

69. Defendants' decision to hire Plaintiff's replacement left him in the untenable situation of allowing Defendants to either terminate Plaintiff based on a now fabricated budgetary reason, remain in a hostile work environment, or take a position with no real job description.

70. Defendants gave Plaintiff no choice but to accept the offered position or risk being fired.

71. Defendants never formally introduced Plaintiff as the new Coordinator of Business and Government Training although they customarily did so for White employees promoted to corporate positions.

72. Defendant refused to supply Plaintiff with the benefits they gave to White employees who were promoted to corporate positions.

73. Even regular non-corporate positions given to White employees had benefits as well.

74. Some of these benefits included: laptop, travel expenses, company cell phone, office space, and mileage reimbursement.

75. Defendants enticed Plaintiff to take the position by stating that it was a promotion.

76. Plaintiff later learned that the position was a lateral move that did not include a pay raise but Defendants told Plaintiff travel expenses were included.

77. Plaintiff travelled extensively throughout New York State soliciting business for STAR in his personal vehicle.

78. Plaintiff submitted several expense reports as required.

79. Defendants initially reimbursed Plaintiff for the travel expenses, but never for mileage when he took the job.

80. Furthermore, as Defendant phased the position out, Defendant did not reimburse Plaintiff's last few expense reports.

81. After fourteen to fifteen months as the Coordinator of Business and Government Training Plaintiff heard rumors that Defendants were phasing out his position.

82. Defendants terminated Plaintiff's supervisor, Ira Nelson on January 23, 2013.

83. Defendants' termination of Mr. Nelson confirmed the rumors of Plaintiff's position being phased out.

84. It became obvious at this point, that Defendants pushed Plaintiff to accept the position knowing they were phasing out the position.

85. After confirming the truth of the rumors, Defendants requested for Plaintiff to return to his old sales position in Manhattan to cover for a sick admissions representative.

86. Defendants were in danger of not making their sales goals and Plaintiff's high level sales skills were needed to assist Defendants in making their numbers.

87. Due to his stellar sales abilities, STAR successfully closed the required number of sales.

88. Plaintiff took on this second job while still performing his corporate duties demonstrating his dedication and team play.

89. Defendants added to Plaintiff's responsibilities by placing him in charge of Vocational and Educational Services for Individuals with Disabilities ("VESID") and full responsibility for filling a 90/10 baking class. 90/10 is a requirement for Title IV funding.

90. This was an important position because if Plaintiff did not keep this class compliant Defendant STAR would be in jeopardy of losing federal funding.

91. During this time Plaintiff reported to three directors and Defendants told Plaintiff not to return to Syosset, New York campus.

92. Plaintiff excelled at all roles simultaneously.

93. Defendants slowly phased out Plaintiff's corporate duties and returned him to his sales position without explanation either verbal or in writing.

94. During Plaintiff's back and forth between Manhattan and Syosset he utilized an individual office at Defendants' Manhattan campus.

95. Upon his return to Manhattan, Defendants stated that Plaintiff remove his belongings from the office and move it into another office.

96. Plaintiff complied and removed and moved his belongings to a new office and started to use the new office.

97. The next day when Plaintiff returned to work his office did not have a door although a door was there the previous night.

98. It remained that way for as long as Plaintiff worked in that office.

99. Every other office on the floor had a door.

100. After Defendants removed Plaintiff from the office to a cubicle the door was replaced.

101. Defendants shortly thereafter placed a White employee in Plaintiff's office and replaced the door.

102. Plaintiff filed another grievance regarding racial slurs in December 2012.

103. Plaintiff shared with a fellow employee, Plaintiff's family's history of emigration to the United States and the fellow employee responded: **"Sure, successful entrepreneurs, cocaine dealers and drug kingpins.  That's the Cuban American dream.  You need to watch "Scarface" Roland so that you can get a clearer understanding of your cultural history in America." ;  "Cubans take drug money and wash it and put it into businesses to become mainstream." ; "Cubans practice Santeria/espiritismo." ; "You came to America on a homemade raft and your parents came on a floating refrigerator."**

104. In addition, Plaintiff was referred to as a **"Sand Nigger"** on several occasions by his fellow employee.

105. **Defendants allowed the above comments to continue throughout Plaintiff's employment.  Defendants never stopped the slurs from being hurled at Plaintiff.**

106. Plaintiff complaints about discrimination continued until his termination.

107. On or about July 16, 2013, STAR terminated Defendant TORTORELLO and hired Defendant DUMERVE as new Campus President.

108. Upon meeting Defendant DUMERVE, Plaintiff reported the harassment and discriminatory atmosphere of the workplace.

109. On September 11, 2013, Plaintiff made a verbal complaint to Defendant DUMERVE regarding unlawful harassment by fellow co-workers.

110. The harassment did not cease.

111. Later that evening, on September 11, 2013, Plaintiff's briefcase was stolen from his office.

112. On September 12, 2013, Plaintiff wrote a letter to Defendant DUMERVE regarding his stolen briefcase.

113. Defendant MUMMA told Plaintiff's supervisor not to provide sales leads to Plaintiff.

114. Defendants continued providing sales leads to the African-American admissions representatives.

115. Despite Defendant not providing Plaintiff with his fair share of leads, Defendants still required Plaintiff to reach his sales goals.

116. Sales leads were essential to Plaintiff's success as his job required recruiting students to STAR.

117. Plaintiff witnessed on several occasions Defendant RUFFIN sexually harassing subordinate employees.

118. Plaintiff confronted Defendant RUFFIN regarding his inappropriate behavior.

119. The result of Plaintiff's complaint to Defendant RUFFIN was a further escalation of the discrimination and retaliation by Defendants against Plaintiff.

120. In or around late July and August of 2013, Plaintiff reported in detail to Defendant DUMERVE the sexual harassment incidents performed by Defendant RUFFIN.

121. On September 17, 2013, Defendants terminated Plaintiff.

122. Defendants terminated Plaintiff under the pretext of alleged misconduct as a result of a mystery shopper.

123. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

124. Defendants' misconduct was continuous throughout Plaintiff's employment at STAR.

125. Plaintiff feels emotionally overwhelmed, depressed, anxious and distraught which is due to the condescending, hostile and general unprofessional treatment that he received from Defendants.

126. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff suffered and continues to suffer severe emotional distress.

127. Plaintiff is experiencing severe anxiety and depression due to the discriminatory, unprofessional, degrading, condescending and hostile treatment towards Plaintiff by Defendants.

128. Defendants' actions were and are intended to create a hostile working environment that no reasonable person would tolerate.

129. Defendant STAR has a pattern and practice of discrimination.

130. The above are just some of the examples of unlawful conduct to which Defendants subjected Plaintiff.

131. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendant. Plaintiff seeks reinstatement, back pay, front pay, all lost wages and earning capacity, punitive damages, damages for emotional distress, physical injuries, and attorney's fees.

## FIRST CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

132. Plaintiff repeats and realleges by this reference the allegations set forth in the above paragraphs of this complaint.

133. Section 1981 states as follows, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

134. The section further states that "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

135. Defendants' discrimination against Plaintiff is in violation of the rights of Plaintiff as afforded to him by the Civil Right Act of 1866, 42 U.S.C. 1981.

136. By the conduct described above, Defendants intentionally deprived the Plaintiff a Cuban and Hispanic American of the same rights as are enjoyed by White citizens to the creation, performance, enjoyment, and all benefits and privileges of his contractual employment relationship with Defendant.

137. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling them to compensatory damages.

138. Defendants acted with malice or reckless indifference to the rights of the above-named Cuban American thereby entitling him to an award of punitive damages.

139. To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests that the Court award him the relief prayed for below.

13

## SECOND CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

140. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

141. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

142. Defendant STAR engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his race.

## THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

143. Plaintiff repeats and realleges each and every allegation made in the above paragraph of this complaint.

144. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to .. discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

14

145. Defendant STAR engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendant.


## FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW

146. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

147. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

148. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his race and hostile work environment.

149. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.


## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW

150. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

151. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

152. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW

153. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

154. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

155. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing as stated herein.

## SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

156. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

157. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

158. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's race and hostile work environment.

159. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

160. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

161. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

17

162. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## NINTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

163. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

164. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

165. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE SUPERVISORY LIABILITY

166. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

167. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

i. the employee or agent exercised managerial or supervisory responsibility; or

ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

168. Defendants violated the above section as set forth herein

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
      April 28, 2015

John C. Luke, Jr., Esq.
LAW OFFICE OF JOHN C. LUKE, JR. ESQ.
30 Broad Street, 35th Floor
New York, New York 10004
Tel. (212) 587-0760
Fax. (212) 587-4169
*Attorneys for Plaintiff*